# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIK ISOM, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 14-237 |
| | ) | |
| vs. | ) | Judge Cathy Bissoon |
| | ) | Magistrate Judge Robert C. Mitchell |
| SUPERINTENDENT JON FISHER, | ) | |
| *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## **MEMORANDUM ORDER**

On February 20, 2014, Petitioner, Erik Isom, submitted a petition for writ of habeas corpus and, after he paid the filing fee, the petition was docketed on February 24, 2014. Thereafter, the case was referred to United States Magistrate Judge Robert C. Mitchell for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Rules 72.C and 72.D of the Local Rules for Magistrates.

Petitioner challenges his conviction by a jury on charges of burglary, criminal trespass, attempted theft by unlawful taking, conspiracy to commit burglary and conspiracy to commit theft, and his sentence of three and a half to ten years' imprisonment, imposed by the Court of Common Pleas of Washington County, Pennsylvania on August 15, 2008. The charges arose from an incident on October 15, 2007, in which Pennsylvania State Constable Paul Kosey, Jr., and his partner received a tip about a possible break-in at the YMCA on West Maiden Street in Washington Pennsylvania, which had been closed for some time and was not open to the public. Constable Kosey heard people talking through the open window of the building, and observed three men inside placing scrap metal inside of a plastic bag. The constables reported the incident

to the Washington City Police and remained on the scene until the officers arrived, at which point the police arrested Petitioner, Michael McKeefer and James Skidmore.

The petition raises six claims regarding the effectiveness of Petitioner's trial counsel, Jeffrey Watson. On July 24, 2014, Magistrate Judge Mitchell filed a Report and Recommendation (R&R), recommending that the petition be dismissed and that a certificate of appealability be denied. (Doc. 21)

On August 20, 2014, and again on August 21, 2014, Petitioner filed objections (Docs. 28 & 30) to the R&R, and on August 28, 2014, he submitted a supplement thereto (Doc. 31). In addition, he resubmitted a reply to the answer (Doc. 29) that was already in the record as an exhibit to his Motion for Leave to File a Traverse Exceeding Normal Page Limitations. (Doc. 19-2)

With respect to his first claim (counsel ineffectiveness for failing to request a "missing evidence" jury instruction regarding the Commonwealth's failure to introduce or make available at trial the plastic bags supposedly recovered by police from the crime scene), Petitioner contends that the Magistrate Judge: 1) incorrectly concluded that Constable Kosey had no knowledge of whether or not the bags were seized as evidence; 2) misconstrued his claim as a due process claim based on an evidentiary error; 3) incorrectly concluded that he had been caught "red handed" committing the crime; 4) failed to take into consideration that Constable Kosey's account of what he observed directly contradicted the testimony of Sgt. Robertson and Michael McKeefer; 5) incorrectly concluded that, had the plastic bags been produced, they would not have exonerated him when his contention is that, if they existed, they would have revealed the absence of any pipes or metal; 6) incorrectly concluded that he suffered no prejudice

2

from counsel's error; and 7) incorrectly recommended dismissal of this non-frivolous claim without affording him an evidentiary hearing with the assistance of counsel.

Petitioner's challenges focus on the testimony of Constable Kosey, which he contends was inconsistent with other testimony in the record, and on the fact that the Commonwealth did not produce the plastic bags into which the men were accused of placing the scrap metal. However, upon review, his contentions are without merit.

Petitioner cites the fact that Constable Kosey testified that he observed Petitioner holding a yellow screwdriver (T.T. at 8), yet both Sgt. Robertson and Petitioner's co-defendant, Michael McKeefer, testified that McKeefer had the screwdriver and Petitioner had a utility knife or box cutter in his pocket (T.T. at 62-63, 86-87). Nevertheless, Petitioner has not explained the significance of this discrepancy, given that all three men were arrested and charged with the same offenses.[1] Whether or not Petitioner was the man holding the screwdriver is irrelevant.

Petitioner focuses on Constable Kosey's testimony that he saw the three men at all times (T.T. at 12-13), even though he clarified shortly thereafter that two men remained in the room while the third man kept leaving and coming back with scrap metal to put in the bag (T.T. at 20-21). McKeefer testified that, once in the building, the three men split up (T.T. at 70, 78-80), and Sgt. Robertson indicated that the three were apprehended in different parts of the YMCA building (T.T. at 86-87, 89, 94). Again, however, Petitioner has not explained the significance of these minor differences. Whether Constable Kosey saw all three men all of the time or only part of the time, his testimony is that he saw them placing scrap metal into plastic bags.

---

[1] According to McKeefer's docket sheet, CP-63-CR-2126-2007, at 4, on May 19, 2008 (five days after Petitioner's conviction), McKeefer pleaded guilty to the charges. As for Skidmore, his docket sheet, CP-63-CR-2129-2007, at 6, reveals that he pleaded guilty to the charges on April 28, 2009.

At trial, Constable Kosey testified that he "did not know" if the police took the plastic bags into evidence (T.T. at 14), and Sgt. Robertson acknowledged that they were not listed in his inventory (T.T. at 96-97). Nevertheless, Petitioner insists that Constable Kosey testified at the preliminary hearing on November 5, 2007 that the "city police" recovered the bags (Prel. Hr'g at 27). He has omitted the fact that, moments later, the following exchange took place:

> Q. Now, the pipe you observed these individuals with, was that taken into custody by the police?
>
> A. I hope so. I don't know what they did.
>
> Q. You don't know?
>
> A. No, sir.
>
> Q. Do you know whether or not the pipe has been printed, fingerprinted?
>
> A. I don't know why they need printed because I seen them put it in the bag, those three gentlemen. There was nobody else in the building except these three individuals standing there right beside the plastic bags and putting stuff in the bags.

(Prel. Hr'g at 29.) Indeed, at the trial, Petitioner's counsel asked Constable Kosey if he remembered answering a question at the preliminary hearing that he <u>supposed</u> the police took the bags and pipes into evidence, and he said "sure." (T.T. at 14.) He supposed the police did, but when questioned further, he admitted that he did not know. In addition to the fact that Constable Kosey would have no reason to know whether the police took items into custody, it is telling that Petitioner wants the Court to accept Constable Kosey's off-hand comment made at the preliminary hearing (which the jury never heard and which he subsequently clarified), when he would have the Court reject everything else Constable Kosey said.

4

Petitioner also repeatedly contends that Constable Kosey "claimed" that the bags were "crucial evidence," citing this exchange:

Q. Okay. That was because that would be crucial evidence.

A. That's evidence.

Q. In fact, that would be crucial evidence to link these defendants with this crime?

A. Sure.

(T.T. at 14-15.) Thus, it was Petitioner's counsel, and not Constable Kosey, who claimed that the bags were crucial evidence such that their absence at trial was significant. This leads to Petitioner's mantra: the Commonwealth did not produce the bags because they did not exist (or if they did, they did not contain scrap metal and thus would have exonerated him), and, thus, counsel was ineffective for failing to request a "missing evidence" instruction that would have highlighted this fact for the jury.

Despite Petitioner's repeated attempts to confuse the issue, however, the simple fact remains that Constable Kosey testified that he observed three men putting scrap metal into plastic bags and he unequivocally identified all three of the men, including Petitioner. (T.T. at 10-11) He stated that the lighting was adequate to see inside, that they were not wearing masks and that no one else was in the building except these three men. (T.T. at 25-26.) That testimony <u>alone</u> was sufficient for the jury to convict Petitioner on the charges, even if the Commonwealth did not produce the plastic bags or their contents.[2] In addition, co-defendant

---

[2] In their Answer, the Respondents argue that Petitioner would not have received a missing evidence instruction because two of the three factors were not met: the bags contained no special information material to the issue based on the fact that Petitioner was wearing gloves, and the contents of the bags would have been merely cumulative of Constable Kosey's testimony.

McKeefer testified that they entered the building to look for copper, brass, wire and metals, that they found brass on the doors and that they removed it for about an hour and put it in a black plastic bag. (T.T. at 62-63.) On cross-examination, McKeefer testified that they had formed no plan to commit a crime before entering the building, but that once inside they discovered copper and brass and decided to remove it and sell it for money. (T.T. at 68-69) And Sgt. Robertson testified that he apprehended McKeefer taking a door hinge off the frame with a screwdriver (T.T. at 86), and that he found Petitioner standing in a room next to some wires that had been pulled from the wall. (T.T. at 87) When asked why he did not ask Petitioner for a statement, Sgt. Robertson replied "We caught him red-handed in the building. I didn't have to get a statement from him." (T.T. at 89.)

Petitioner's contentions rely upon ambiguities in the record, which he would have the Court construe in his favor. Establishing that the record is ambiguous, however, is insufficient to carry his burden, as an ambiguous record redounds to Petitioner's detriment. See Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. . . . [The habeas petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and [the case law] emphasizes that one who seeks collateral relief bears a heavy burden."); Robinson v. Smith, 451 F. Supp. 1278, 1284 n. 6 (W.D.N.Y. 1978) (resolving ambiguities against petitioner); Patrick v. Johnson, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000)

---

The Answer also argues that Petitioner cannot demonstrate prejudice because his trial counsel highlighted the fact that the bags were not preserved. Although it is not this Court's function to resolve issues of state law, these observations further demonstrate why the claim is without merit.

6

("whatever ambiguity exists in the record must be resolved in favor of the [state] trial court's finding"). Moreover, post-AEDPA, an ambiguous record, by definition, could support the state court's disposition (even though it could also support Petitioner's position), which means that Petitioner cannot establish that the factual findings were unreasonable. 28 U.S.C. § 2254(d)(2).

The Magistrate Judge concluded that Petitioner had not shown either ineffective performance of counsel or prejudice with respect to counsel's failure to request a missing evidence instruction. His protestations to the contrary notwithstanding, Petitioner has not demonstrated that either of these conclusions was erroneous. Therefore, his objections are overruled.

With respect to his second claim (counsel ineffectiveness for failing to object to or move to strike McKeefer's testimony), Petitioner argues that the Magistrate Judge: 1) erroneously suggested that counsel had no basis to object when even the R&R's own statement of facts noted that McKeefer had testified that he never entered into an agreement to commit a crime with Petitioner and Skidmore, and that McKeefer was accusing Petitioner of removing scrap metal when he never saw him do so, in violation of Pennsylvania's personal knowledge rule; 2) incorrectly gave a presumption of correctness to Constable Kosey's testimony when it was contradicted; 3) incorrectly implied that the fact that Petitioner was wearing gloves when he was apprehended and that an electrical cord was allegedly ripped from the wall somehow proved that he had ripped the cord from the wall when Sgt. Robertson did not see him engaging in any criminal behavior and the pristine nature of the gloves was inconsistent with the allegation that he had been handling dirty items; 4) incorrectly characterized Petitioner's claim as a credibility issue with respect to McKeefer's testimony when he is challenging trial counsel's ineffectiveness

in not preventing McKeefer from testifying; 5) incorrectly suggested that the testimony of Sgt. Robertson and Constable Kosey somehow bolstered McKeefer's testimony when it did not; and 6) incorrectly recommended dismissal of this non-frivolous claim without affording him an evidentiary hearing with the assistance of counsel.

The Magistrate Judge observed the following inconsistencies in McKeefer's testimony: at one point, he indicated that the three men formed a plan to steal scrap metal from the YMCA building prior to going there (T.T. at 61-62, 77-78, 81), and at another point he claimed they did not (T.T. at 66-68); he stated that they spent an hour removing brass and putting it in plastic bags (T.T. at 63), but also that he was in a separate room from Petitioner so he did not know what he did (T.T. at 80); and he did not see Petitioner pull wires out of a wall or take anything out of the building (T.T. at 70-71). There is no legal basis for "striking" a witness's testimony because it is internally inconsistent; that is the purpose of cross-examination. The jury heard all this testimony and could choose which parts to believe.

In addition, on his direct appeal, Petitioner contended that the trial court improperly permitted the Commonwealth, on re-direct examination of McKeefer, to ask when he and Petitioner had agreed to steal the copper because McKeefer had denied entering into an agreement when he testified on cross-examination. The trial court's opinion with respect to this issue was as follows:

> During direct examination, Mr. McKeefer had testified that he and his co-defendants had discussed stealing copper and brass from the YMCA while at "the Beach" drinking beer. On cross examination Mr. McKeefer answered in the negative to leading questions reading whether he and his co-defendants had "entered an agreement" to commit a crime prior to entering the YMCA. The Commonwealth, to avoid confusion by this discrepancy in Mr. McKeefer's testimony, attempted to clarify and rehabilitate Mr. McKeefer's testimony, again asking when the co-defendants had made an agreement. This Court overruled the

8

> Defendant's objection, holding that the Commonwealth had a right to clarify and
> rehabilitate the witness's testimony. Although the question may have been
> repetitive, the interrogation of the witness on re-direct examination sought to
> ascertain the truth, was not time consuming, and was not harassing to the witness.
> This Court was well within its discretion, outlined in [Pennsylvania] Rule
> [of Evidence] 611(a), regarding the control of interrogating witnesses.

(Tr. Ct. Op. at 6.) The Pennsylvania Superior Court upheld this ruling and affirmed on this basis. (Super. Ct. Op. at 7.) Thus, Petitioner has already lost on the underlying merits of the claim based on inconsistencies in McKeefer's testimony, and counsel cannot be deemed ineffective for failing to make a meritless objection.

The Court has summarized above Constable Kosey's testimony and has explained why it was not "contradicted on virtually every significant point," as Petitioner contends. As for Sgt. Robertson, Petitioner's counsel asked him about the pristine nature of the gloves Petitioner was wearing when he was apprehended as contrasted with the dirty surroundings (T.T. 87-88, 90-92) and, thus, he was able to consider this evidence as well. It is not the province of this Court to re-weigh the evidence or the credibility of the witnesses. These objections are overruled.

With respect to his third issue (counsel ineffectiveness for failing to investigate or call Skidmore to testify on his behalf), Petitioner contends that the Magistrate Judge erred by: 1) suggesting that, because Skidmore gave his affidavit three months after the trial, Petitioner cannot show that Skidmore would have testified in a manner favorable to him at trial; 2) unreasonably concluding that Skidmore would not have been a credible witness when trial counsel's expressed reason for not calling him was that he was "homeless," a conclusion based on personal bias and not the result of a reasonable investigation; 3) erroneously concluding that

9

Skidmore's proposed testimony would not have helped him because of the testimony of Constable Kosey and McKeefer, for all the reasons asserted above; 4) erroneously suggesting that Skidmore's testimony would be given little credibility because he was a co-defendant, when, in fact, his testifying on behalf of Petitioner would have been against his own penal interest and, therefore, more credible; and 5) concluding that there was no evidence that Skidmore would have testified favorably for him at trial when, as Petitioner explained in his traverse, Skidmore had tried to enter the courtroom and testify but was not permitted to enter.

First, Petitioner has no basis for contending that 1) Skidmore tried to enter the courtroom but was prevented from doing so (Skidmore's affidavit does not say this); 2) that counsel's reason for not calling Skidmore was that he was "homeless;" 3) that there is any reason to believe that Skidmore would have agreed to testify on his behalf, thereby risking placing his own criminal record at issue, other than Skidmore's August 25, 2008 affidavit in which he contends that they went to the YMCA to rest while Petitioner was going to a job interview: 4) that the door was open; 5) that the only bag they had contained beer; and 6) that McKeefer was attempting to place the blame on the two of them because he had been caught with the screwdriver. Most important, however, Skidmore pleaded guilty to the charges on April 28, 2009. Therefore, Petitioner is judicially estopped from relying upon Skidmore's August 25, 2008 affidavit, in which he maintains his innocence and makes other statements that cannot be reconciled with his guilty plea.

Second, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of counsel's effectiveness]. Therefore, where the record is incomplete or unclear about [counsel]'s actions, [the court] will presume that he did what he should have

10

done, and that he exercised reasonable professional judgment." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (citation omitted). In the absence of record evidence about trial counsel's actions, this Court will presume that he did not call Skidmore to testify because his taking the witness stand would have opened up both his prior criminal history and Petitioner's, thereby far outweighing any possible benefit that could have been gained by having him testify on Petitioner's behalf. The objections to this claim are overruled.

With respect to the fourth issue (counsel ineffectiveness for failing to permit Petitioner to testify), Petitioner argues that the Magistrate Judge: 1) erroneously suggested that, because he spoke to counsel prior to resting, and counsel announced to the court that he was not going to testify, this established that Petitioner knew he had a right to testify; 2) erroneously concluded that, because he was generally aware of his right to testify, he knew he could do so in spite of his attorney's opposition; 3) erroneously assumed that trial counsel informed him that the ultimate decision regarding whether to testify was Petitioner's to make; 4) erroneously found a waiver of his right to testify in the absence of an on-the-record colloquy and without conducting an evidentiary hearing; and 5) erroneously concluded that trial counsel's strategic concerns over Petitioner's testifying justified counsel acting to prevent Petitioner from doing so by misleading him into believing the decision was counsel's to make.

After the Commonwealth rested, Petitioner's counsel said, "[t]he Defendant is not going to testify." (T.T. at 100.) After a break, the jury was brought back in, and counsel again stated, "I have spoken with my client and we both agree that we will rest at this time." (T.T. at 102.) Despite Petitioner's bizarre argument, the fact that his counsel indicated that they spoke and that Petitioner was not going to testify did establish that he knew that he had the right to testify.

11

Petitioner contends that the R&R misrepresented his claim by indicating that he "states that counsel did not want to call either [Skidmore] or McKeefer to testify for fear of petitioner's criminal record coming before the jury." (R&R at 8.)[3] In any event, the Court reasonably may presume that counsel did not want Petitioner (or his co-defendants) to testify because it would have opened the door to his prior criminal history, and Petitioner's objection is without merit.

Finally, Petitioner indicates in his objections that he withdraws his fifth and sixth claims (Doc. 30 at 16). Therefore, nothing further need be said about them.

Consistent with the foregoing, and after a *de novo* review of the pleadings and documents in the case, together with the Report and Recommendation and the Objections thereto, the following Order is entered:

Petitioner's Objections to the R&R are **OVERRULED**; his petition for a writ of habeas corpus (**Doc. 4**) is **DISMISSED**; and, because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is **DENIED**. The Report and Recommendation of Magistrate Judge Mitchell dated July 24, 2014 (Doc. 21) hereby is adopted as the Opinion of the District Court, as supplemented herein.

IT IS SO ORDERED.


September 16, 2014                          s\Cathy Bissoon
                                                             Cathy Bissoon
                                                             United States District Judge

---

[3] Although the above-quoted passage made reference to "[Constable] Kosey or McKeefer," it is obvious, reading the R&R in context, that Judge Mitchell meant to say "Skidmore or McKeefer." See discussions supra. This minor typographical error hardly supports Petitioner's suggestion that Judge Mitchell exhibited "carelessness and indifference" in disposing of his claims. Cf. Doc. 30 at 12. To the contrary, Judge Mitchell gave adequate consideration to all of Petitioner's claims; he simply did not decide in Petitioner's favor.

cc (via First-Class U.S. Mail):

Erik Isom
HS-3329
SCI Smithfield
Box 999
1120 Pike Street
Huntingdon, PA  16652


cc (via ECF email notification):

All Counsel of Record